IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAHEED TAALIB'DIN MADYUN,

                                                    ORDER

                Plaintiff,

                                                    07-C-318-C

      v.

KENNETH KELLER; ANGIE WOOD; LT. KUSTER;
LT. KIRBY LINJER; CO. II CAROL COOK;
PETER ERICKSON; CAPT. BRANT; LT. LAMBRECHT;
WILLIAM POLLARD; DR. STEVEN SCHMIDT;
CAPT. BRUCE MURASKI; PHIL KINGSTON;
DON STRAHOTA; CAPT. O'DONOVAN; SGT. VOSS;
SGT. LEHMAN; SIEDSCHLAG; and CAPT. WIERENGA,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff is proceeding in this case on the following claims:

      1. In June 2001, while plaintiff was confined at the Oshkosh Correctional Institution, defendant Kuster confiscated plaintiff's watch in retaliation for plaintiff's work as a jailhouse lawyer and his complaints about prison conditions.

      2. In September 2001, also while plaintiff was confined at the Oshkosh Correctional Institution, defendant Carol Cook put "medicine or poison" in plaintiff's food in violation of his Eighth Amendment rights. In March 2002, defendant Cook violated plaintiff's Eighth

1

Amendment rights again when she put handcuffs on plaintiff so tightly that it caused his wrists to bleed and when she refused to seek medical treatment for him. Cook's March 2002 actions also violated plaintiff's right of access to the courts because they were taken to retaliate against plaintiff for his jailhouse lawyering activities.

3. Also in September 2001, defendant Angie Wood put plaintiff in segregation in retaliation for his activities as a jailhouse lawyer and because of his complaints about prison conditions. This same defendant violated plaintiff's Eighth Amendment rights in October 2001, when she failed to obtain medical care for plaintiff after learning the plaintiff had ingested pieces of razor blades that had been hidden in a piece of pie.

4. In November 2001, defendant Linjer violated plaintiff's Eighth Amendment rights by prolonging his exposure to smoke from a fire another inmate set in plaintiff's unit.

5. In February 2002, defendants Kuster, Kirby Linjer and a John Doe officer violated plaintiff's Eighth Amendment rights when they assaulted plaintiff in his cell.

6. In March 2002, defendants Linjer and Kuster and defendant Kenneth Keller issued a conduct report against plaintiff and sentenced him to segregation because of his activities as a jailhouse lawyer and his complaints about prison conditions;

7. In June 2002, shortly after plaintiff was transferred to the Green Bay Correctional Institution, defendant Peter Erickson put plaintiff in segregation because of plaintiff's activities as a jailhouse lawyer and complaints about prison conditions.

2

8.  Sometime in late 2005 or early 2006, also while plaintiff was confined at the Green Bay Correctional Institution, defendants William Pollard and Peter Erickson violated plaintiff's Eighth Amendment rights by inducing him to experience symptoms of a heart attack.

9.  In September 2005, defendants Erickson and Capt. Brant issued conduct reports to plaintiff and defendant Lt. Lambrecht placed plaintiff in segregation for "Enterprising and Fraud" and "Unauthorized Transfer of Property" in retaliation for plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions;

10. In 2005 and 2006, defendants William Pollard, Peter Erickson and Steven Schmidt conspired to send plaintiff to segregation because of plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions;

11. Sometime in late 2006, after plaintiff had been transferred to the Waupun Correctional Institution, defendants Bruce Muraski, Don Strahota, Captain Wierenga, Sergeant Voss and Captain O'Donovan conspired to place plaintiff in segregation because of his activities as a jailhouse lawyer and his complaints about prison conditions.  In addition, defendant Muraski ordered officers to destroy plaintiff's legal materials and personal documents because of plaintiff's lawyering activities.

12. Also in late 2006, defendants Captain Wierenga, Sergeant Lehman, Don Strahota and Phil Kingston denied plaintiff his religious and legal materials because he is a

3

Muslim and a jailhouse lawyer.

13. Sometime after January 16, 2007, defendant Siedschlag refused to advance plaintiff through the segregation step program and denied him access to the law library because of plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions.

Defendants have answered the complaint and a preliminary pretrial conference was held on October 23, 2007, before Magistrate Judge Stephen Crocker. At that time, the magistrate judge set a schedule for moving this case to resolution. Now, however, I must stay the proceedings, because a recent ruling of the Court of Appeals for the Seventh Circuit requires me to sever the majority of plaintiff's claims into separate lawsuits, and plaintiff will have to choose which of the separately identified lawsuits he wishes to prosecute under the case number assigned to this action.

In George v. Smith, --- F.3d ---, No. 07-1325 (7th Cir. Nov. 9, 2007) (copy attached), the court of appeals ruled that a prisoner may not "dodge" the fee payment or three strikes provisions in the Prison Litigation Reform Act by filing unrelated claims against different defendants in one lawsuit. Rather, district courts must sever unrelated claims against different defendants or sets of defendants and require that the claims be brought in separate lawsuits. The court reminded district courts that Fed. R. Civ. P. 20 applies as much to prisoner cases as it does to any other case.

4

Fed. R. Civ. P. 20(a) governs the number of parties a plaintiff may join in any one action. It provides that a plaintiff may sue more than one defendant when his injuries arise out of "the same transaction, occurrence, or series of transactions or occurrences" and when there is "any question of law or fact common to all defendants." Thus, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all. Id.; 3A Moore's Federal Practice ¶ 20.06, at 2036-2045 (2d ed. 1978). If the requirements for joinder of parties have been satisfied under Rule 20, only then may Fed. R. Civ. P. 18 be used to allow the plaintiff to join as many other claims as the plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions. Intercon Research Assn., Ltd. v. Dresser Ind., Inc., 696 F.2d 53, 57 (7th Cir. 1983) (quoting 7 Charles Alan Wright et al., Federal Practice & Procedure).

In applying Rule 20 to this case, I conclude that plaintiff's complaint must be divided into nine separate lawsuits. These actions are not properly heard together in a single lawsuit under Rule 20 because they do not arise out of the same transaction occurrence, or series of transactions and occurrences. Plaintiff's unsupported belief that most if not all of the defendants were motivated to act against him because of his legal activities is not enough to

transform the separate acts of the defendants into a "series of transactions or occurrences." Plaintiff is contending that a total of eighteen different individuals at three different institutions did different things to him at different times over a six-year period. The acts range from the trivial (confiscation of plaintiff's watch) to shockingly serious (putting poison in plaintiff's food and refusing him medical attention after he ingested slivered pieces of razor blades). For each act, plaintiff will have to prove that the act actually occurred and that the intent of the individual in committing the act was to punish plaintiff for engaging in legal activities. This will require plaintiff to conduct discovery specific to the separate incidents and the motivation of the separate individuals and to seek out witnesses specific to the individual events.

The central purpose of Rule 20 is to enable economies in litigation, such as trial convenience and timely resolution of disputes. Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000); Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974). The Federal Rules, however, and the Prison Litigation Reform Act, recognize countervailing considerations to judicial economy. Rule 42(b), for example, provides for separate trials where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants. Fed. R. Civ. P. 42(b); Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996). In addition, as recognized in George v. Smith, the Prison Litigation Reform Act's filing fee requirements are circumvented when prisoners are allowed to include a plethora

6

of separate, independent claims in one lawsuit.

Here, not even considerations of convenience and expedited dispute resolution militate in favor of allowing plaintiff to proceed in one lawsuit with all of his claims. Indeed, severance of plaintiff's claims will further the aims of the PLRA and fairness. Although there may be a common question of law presented, there are no common questions of fact at issue. As noted above, proof of wrongdoing will be unique to each specific incident. Moreover, it seems likely that the defendants would suffer some prejudice if the claims are heard together. The likelihood of juror confusion if this case were tried as a whole is great in light of the large number of persons involved and the different incidents being contested. Some defendants may suffer prejudice if the jury concludes that other defendants, on different dates, acted in a manner that violated any of plaintiff's rights. In sum, plaintiff's claims are appropriately severed under Rules 20 and 18 as set forth below.

In what I will call Lawsuit #1, plaintiff may litigate his claim that defendant Carol Cook put "medicine or poison" in plaintiff's food in September 2001 in violation of his Eighth Amendment rights. In this same lawsuit, plaintiff litigate his claims that in March 2002, defendant Cook violated his Eighth Amendment rights and retaliated against him for exercising his right of access to the courts when she put handcuffs on plaintiff so tightly that it caused his wrists to bleed and when she refused to seek medical treatment for him.

In what I will call Lawsuit #2, plaintiff may litigate his claim that in September 2001,

7

defendant Angie Wood put plaintiff in segregation in retaliation for his activities as a jailhouse lawyer and because of his complaints about prison conditions. In addition, plaintiff may litigate his claim that Wood violated plaintiff's Eighth Amendment rights in October 2001, when she failed to obtain medical care for plaintiff after learning the plaintiff had ingested pieces of razor blades that had been hidden in a piece of pie.

In what I will call Lawsuit #3, plaintiff may litigate his claim that defendants Kuster, Kirby Linjer and a John Doe officer violated plaintiff's Eighth Amendment rights when they assaulted plaintiff in his cell in February 2002.

In what I will call Lawsuit #4, plaintiff may litigate his claim that in March 2002, defendants Linjer, Kuster and Kenneth Keller issued a conduct report against plaintiff and sentenced him to segregation because of his activities as a jailhouse lawyer and his complaints about prison conditions.

Under Fed. R. Civ. P. 18, plaintiff may add to either Lawsuit #3 or Lawsuit #4 his claim that in November 2001, defendant Linjer violated his Eighth Amendment rights by prolonging his exposure to smoke from a fire another inmate set in plaintiff's unit. In addition, he may add to either Lawsuit #3 or Lawsuit #4 his claim that in June 2001, defendant Kuster confiscated his watch in retaliation for plaintiff's work as a jailhouse lawyer and his complaints about prison conditions.

In what I will call Lawsuit #5, plaintiff may litigate his claim that defendants William

8

Pollard, Peter Erickson and Steven Schmidt conspired to send him to segregation in 2005 and 2006 because of his activities as a jailhouse lawyer and his complaints about prison conditions. In this same lawsuit, plaintiff may litigate his claim that sometime in late 2005 or early 2006, defendants Pollard and Erickson violated his Eighth Amendment rights by inducing him to experience symptoms of a heart attack. Finally, plaintiff may include in Lawsuit #5 his claim that in June 2002, defendant Erickson put plaintiff in segregation because of plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions.

In what I will call Lawsuit #6, plaintiff may litigate his claim that in September 2005, defendants Erickson, Capt. Brant and Lt. Lambrecht issued conduct reports to plaintiff and placed him in segregation for "Enterprising and Fraud" and "Unauthorized Transfer of Property" in retaliation for plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions.

In what I will call Lawsuit #7, plaintiff may litigate his claim that sometime in late 2006, after plaintiff had been transferred to the Waupun Correctional Institution, defendants Bruce Muraski, Don Strahota, Captain Wierenga, Sergeant Voss and Captain O'Donovan conspired to place plaintiff in segregation because of his activities as a jailhouse lawyer and his complaints about prison conditions. In addition, plaintiff may litigate his claim that defendant Muraski ordered officers to destroy plaintiff's legal materials and

9

personal documents because of plaintiff's lawyering activities.

In what I will call Lawsuit #8, plaintiff may litigate his claim that in late 2006, defendants Captain Wierenga, Sergeant Lehman, Don Strahota and Phil Kingston denied plaintiff his religious and legal materials because he is a Muslim and a jailhouse lawyer.

Finally, in what I will call Lawsuit #9, plaintiff may litigate his claim that sometime after January 16, 2007, defendant Siedschlag refused to advance plaintiff through the segregation step program and denied him access to the law library because of plaintiff's activities as a jailhouse lawyer and his complaints about prison conditions.

In light of George, I may apply the filing fee plaintiff paid in this case to only one of the nine lawsuits I have identified above. Plaintiff will have to choose which lawsuit that is. That lawsuit will be the only lawsuit assigned to this case number.

As for the other lawsuits, plaintiff has a more difficult choice. He may choose to pursue each lawsuit separately. However, because he has struck out under § 1915(g), he will have to pay the full filing fee before he may proceed further with any one of them. Alternatively, plaintiff may choose to dismiss any or all of his remaining lawsuits voluntarily. If he chooses this latter route, plaintiff will not owe additional filing fees. Any lawsuit dismissed voluntarily would be dismissed without prejudice, so plaintiff would be able to bring it at another time.

I understand that it is not normally the case that a lawsuit may be withdrawn without

prejudice when a case has progressed as far as this one has. However, in light of the unanticipated and far-reaching effect of the George decision on existing prisoner litigation, I intend to permit prisoner litigants in cases pending in this court at the time the George opinion was issued to dismiss without prejudice the separate lawsuits within their original complaint that have been identified as requiring severance.

ORDER

IT IS ORDERED that

1. Plaintiff may have until January 20, 2008, in which to identify for the court and defendants the separately numbered lawsuit identified in the body of this opinion on which he wishes to proceed under the number assigned to this case. As to this one lawsuit, plaintiff's filing fee payment will be applied.

2. Plaintiff may have until January 20, 2008, in which to advise the court which of the remaining separately numbered lawsuits he will prosecute, if any, and which he will withdraw voluntarily.

3. For any lawsuit that plaintiff dismisses voluntarily, he will not owe a filing fee.

4. For any lawsuit that plaintiff advises the court he intends to prosecute, (other than the one plaintiff chooses to keep assigned to this case number) plaintiff will owe a separate $350 filing fee, which he must pay in full no later than January 17, 2008. The payment(s)

may be submitted by a check or money order made payable to the clerk of court.

5.  If, by January 20, 2008, plaintiff fails to respond to this order, I will enter an order dismissing the lawsuit as it presently exists with prejudice for plaintiff's failure to prosecute.

6.  All proceedings are STAYED in this case pending plaintiff's response to this order.

Entered this 27th day of December, 2007.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge